**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARDIONET, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MEDI-LYNX CARDIAC MONITORING, LLC, et al., <br><br> Defendants. | Civil Action No. 15-8592 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on three separate motions to dismiss by Defendants Medi-Lynx Cardiac Monitoring, LLC ("Medi-Lynx"), Janis Hardill ("Hardill"), and Michael Solop ("Solop") (collectively, "Defendants") Plaintiffs CardioNet, Inc. ("CardioNet") and MedNet Healthcare Technologies, Inc.'s ("MedNet") (collectively, "Plaintiffs") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 6-8.) Plaintiffs opposed the motions (ECF Nos. 12-14), and Defendants replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' motions are granted.

I.    **Background**[1]

This is a dispute between competing companies regarding the alleged solicitation by Medi-Lynx of Plaintiffs' employees. (*See generally* Notice of Removal Ex. A ("Compl."), ECF No. 1.) CardioNet and MedNet are affiliated companies. (*Id.* ¶ 9.) CardioNet provides "mobile cardiac outpatient telemetry products and services to physicians, hospitals, and monitoring services in New Jersey and around the country," and MedNet provides "remote cardiac monitoring products and services to physicians, hospitals, and monitoring services in New Jersey and around the country." (*Id.* ¶¶ 6, 8.) Defendant Medi-Lynx also provides "remote cardiac monitoring products and services to physicians, hospitals, and monitoring services, including in New Jersey and Pennsylvania." (*Id.* ¶ 10.) Medi-Lynx is Plaintiffs' direct competitor. (*Id.* ¶ 10.)

Beginning in or about April or May 2015, Medi-Lynx "began a specific campaign to target Plaintiffs' employees." (*Id.* ¶ 14.) Hardill and Solop, both former employees of MedNet and current employees of Medi-Lynx, "began to directly or indirectly contact current employees of Plaintiffs in order to solicit their employment with Medi-Lynx." (*Id.* ¶¶ 15-16.) Between April 25, 2015, and May 25, 2015, ten of Plaintiffs' employees voluntarily resigned to begin employment with Medi-Lynx. (*Id.* ¶ 19.) "Many of the employees who voluntarily resigned from Plaintiffs and began their employment with Medi-Lynx had been employed in the Clinical Operations Department." (*Id.* ¶ 20.) In correspondence dated May 20, 2015, MedNet demanded that Medi-Lynx cease and desist from soliciting or hiring Plaintiffs' employees. (*Id.* ¶¶ 17-18.)

---

[1] For the purpose of this motion, the Court accepts the facts alleged in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief").

2

Plaintiffs alleged that "[t]he solicitation of such a large number of employees, all from clinical operations, was done with the intent to staff Medi-Lynx's newly opened operation in Newtown, Pennsylvania with experienced technical employees who had already been trained and developed by Plaintiffs." (*Id.* ¶ 21.) Plaintiffs state that Defendants have continued their efforts to solicit and hire Plaintiffs' employees and that this conduct has harmed their business. (*Id.* ¶¶ 22-27.) In the Complaint, Plaintiffs assert two counts against Defendants for: (1) employee piracy/ tortious interference with employment relations; and (2) unjust enrichment.

## II.  Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts

alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. Analysis

Defendants separately move to dismiss Plaintiffs' Complaint arguing that, under New Jersey law, Plaintiffs fail to plausibly plead a claim for tortious interference because Plaintiffs' bare allegations fail to show that Defendants acted with malice.[2] Specifically, Defendants argue that Plaintiffs' Complaint fails to provide any factual details regarding the circumstances of Defendants' contacts with Plaintiffs' employees to satisfy the element of malice, because contact alone is not enough to satisfy the malice requirement. In opposition, Plaintiffs argue that their allegations of Defendants' solicitation of Plaintiffs' fully trained experienced staff for its newly opened location are sufficient to defeat Defendants' motions to dismiss based on the Superior Court of New Jersey's holding in *Wear-Ever Aluminum, Inc. v. Townecraft Industries, Inc.*, 75 N.J. Super. 135 (Ch. Div. 1962).

Under New Jersey law, "[t]he mere persuasion of an employee to change jobs is not wrongful; but if it is done to injure the employer, it is wrongful." *Avtec Indus., Inc. v. Sony Corp. of Am.*, 205 N.J. Super. 189, 193 (App. Div. 1985) (citing *Wear-Ever Aluminum, Inc.*, 75 N.J. Super. at 142). Guided by the decision in *Wear-Ever*, the Appellate Division in *Avtec* held that "[i]t is by the means used that [a defendant's] right to interfere with [an employee's] subsisting

---

[2] Defendants also argue that the Court should conduct a preliminary choice of law analysis "[s]ince this controversy was brought in New Jersey but involves residents of Pennsylvania who are employed in Pennsylvania and entities with offices in Pennsylvania who are competing in Pennsylvania." (Defs.' Moving Brs. 4-5, ECF Nos. 6-1, 7-1, 8-1.) Due to the factual inquiry that is necessary to properly weigh the Restatement factors and the limited relevant facts contained in the Complaint, the Court finds it inappropriate at the motion to dismiss stage in this particular case to decide choice of law. "Since Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

4

employment must be determined." *Id.* at 194. In the employee piracy context, the *Avtec* court found that interference has been established where there was "egregious conduct directed toward destruction of a competitor's business." *Id.* at 195 (citing *Wear-Ever*, 75 N.J. at 141 (finding defendant used deceitful practices in which it secretly used plaintiff's manager to induce an entire sales force to desert plaintiff for defendant)).

Here, Plaintiffs allege that: (1) Defendants, including two prior employees of Plaintiffs, began to directly or indirectly contact current employees of Plaintiffs in order to solicit their employment with Medi-Lynx (Compl. ¶¶ 14-16); (2) fourteen of Plaintiffs' employees voluntarily resigned to begin employment with Medi-Lynx, many of whom worked in the Clinical Operations Department (*id.* ¶¶ 19-20); and (3) Defendants took these actions "with the intent to staff Medi-Lynx's newly opened operation in Newtown, Pennsylvania with experienced technical employees who had already been trained and developed by Plaintiffs" (*id.* ¶ 21). These facts do not show that Defendants acted without justification or excuse when they hired Plaintiffs' employees.[3] Unlike the facts of *Wear-Ever*, Plaintiffs fail to allege any facts in the Complaint regarding the circumstances surrounding Defendants' contacts with Plaintiffs' employees. Therefore, Plaintiffs fail to state a claim for tortious interference under New Jersey law and Count One is dismissed.

Additionally, "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (citing *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited

---

[3] Additionally, Plaintiffs allege additional facts not contained within the Complaint in their opposition brief. A party, however, may not amend its pleadings through arguments or facts alleged in opposition to a motion to dismiss. *See Bell v. City of Phila.*, 275 F. App'x. 157, 160 (3d Cir. 2008) (noting that a plaintiff cannot amend the complaint through briefing).

for the most part to its use as a justification for other torts such as fraud or conversion.")). "Rather, in the tort setting, 'an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).'" *Id.* (quoting S*teamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)). Accordingly, because Plaintiffs' unjust enrichment claim sounds in tort, Count Two is dismissed.

IV.    **Conclusion**

For the reasons set forth above, Defendants' motions to dismiss are granted. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
UNITED STATES DISTRICT JUDGE

Dated: August 22, 2016